I appear today on behalf of Corey Moore, who was convicted in the District Court of Maryland for various charges related to drug trafficking and possession of a gun in furtherance of drug trafficking. We wish to present two arguments, one of which we believe requires a complete reversal of these convictions, and the other would require a resentencing. With respect to the first, all of the evidence that was introduced below originates from an unlawful stop by the police in Tacoma Park, Maryland, of Mr. Moore while he was walking down the street carrying a juice bottle. With respect to the second, it relates to the guns that were found pursuant to a search warrant, and as this panel has previously heard this case, a search warrant that was issued after Moore was arrested on the street, and during that search warrant, the police located two guns in a closet in a bedroom, as well as a quantity of PCP under the kitchen sink. The problem with the gun, if I could address the gun case first. The problem with this case, with the evidence below, is that there is simply no evidence. This court is, of course, on appeal, required to view the evidence in the light most favorable to the prevailing party below, which was the government. And the evidence in this case, and the statute, the 924C, requires that the government must prove that Mr. Moore possessed the gun, and that it was possessed in furtherance of drug trafficking. What about the fact that $45,000, there was a loaded firearm, what, 2,800 grams of PCP under the kitchen sink, there was a digital scale with cocaine residue on it, and just several days earlier, half a kilo of cocaine was, he was seen abandoning that in a dumpster. Why doesn't this all suggest that he was actively involved in the drug trade, and that he was using his firearm in furtherance of his activities? Well, Your Honor, there's two steps to that analysis. The first part, was he involved in the drug trade? And second, did he possess the gun in furtherance of the drug trade? With respect to the first, if the evidence is invisible in the first place, then it is certainly within the purview of the District Court, who acted as the fact finder in a bench trial here, to infer from the amount of the cocaine and the amount of the PCP, that that amount is indicative of possession with intent to distribute. That amount of PCP is well beyond anyone's personal use, as is the cocaine. But you have, in this case, it was a five-day bench trial, it wasn't a jury trial, it was a five-day bench trial. And the District Court found that the requisite nexus between guns and drugs was there. You know, there's been a tendency in 924C to make it a statute where angels dance on the head of a pin, and where we, you know, just fine-tune it to death, and that was tried in the Bailey case, and Congress promptly reversed it. But isn't there a factual finding here? Isn't this a matter of fact, the nexus, whether the nexus, a sufficiently close nexus, exists between the guns and the drugs? There is a factual finding, Your Honor, but first, the District Court failed to articulate what that finding was. It's factual, isn't it? It is, but there must be a basis for that. So we're reviewing this under clearly erroneous standard, are we not? We would have to be. We would have to be, Your Honor. Yes, we would have to be, I can't think of... So why is it, why is the District Court finding clearly erroneous? The District Court's finding is clearly erroneous, Your Honor, because there has to be evidence for which to support that finding in the first place. And as Judge Keenan noted, certainly the amount of drugs that were found, and the inferences that can be used, that the District Court can make and find, that the defendant possessed those drugs with intent to distribute, even though there's no testimony at all that he did distribute. No witnesses, nothing, that ever saw him distribute those drugs in any way, in any place. Second, the District Court can find, on the basis of... $25,000 in cash doing, do you mean had, in cash? Your Honor, to be clear, if that evidence is admissible, then the District Court clearly had a basis on which to conclude that Mr. Moore possessed the drugs with intent to distribute. And further, the guns that were found in his apartment, based on the testimony of the police who did the search, and other witnesses who testified as to Mr. Moore's use, sole possession of the apartment... But drug dealers often are robbed, because they are known to be in possession of large amounts of cash. We've had a lot of cases where people come in to the homes of drug dealers and rob them. Often, you know, there are people who make an entire profession out of robbing drug dealers. They find out who the drug dealers in the community are, and then they rob them. And so, in order to protect themselves, personally, and to protect the amount of cash that they have, they get the firearms. In this case, he was illegally having the firearms, but that's not really at issue here. But with this quantity of drugs, and that much money, it's permissible for the finder of fact, and certainly not clearly erroneous for the finder of fact, to determine, as a Nexus, was found. I mean, the firearm didn't have to be sitting on top of the cash, as long as it was within reasonable proximity. Your Honor, I do disagree on two points on that. We're rehashing the results of a five-day bench trial with a finding of fact. Well, Your Honor, part of an appeal is to review, not the factual findings per se, but determine whether there is evidence to support those factual findings. And my argument here today is that the district court could easily have found, from the amount of the drugs that they were possessed with, intent to distribute, it also could have found that the guns were possessed by Mr. Moore, based on their location in an apartment to which he had pretty much sole access, based on the testimony. What there is not, is anything more than what Your Honor just posited, that drug dealers get robbed, and therefore drug dealers, generically, might possess a gun. But this was more than just a drug dealer, we're talking about a huge amount of cash. I mean, how many people carry $45,000 in cash, in that particular medium, that amount of drugs? But that's, you know, first, I mean, there is other evidence, and in fact, he carried drugs, cocaine, without carrying the guns. But more than that, the evidence is all, all that evidence is exactly contrary to what this court has held, what Your Honor wrote in Lomax, that possession is not sufficient to establish in furtherance. And what Judge Gregory wrote in another case, that possession at the scene of the crime is not sufficient to establish in furtherance. Under the statute, every word, you know, every word must mean something. So merely having possession is not, by per se, in furtherance. This is not, you know, well. In fact, when you mentioned the Bailey case, in the Bailey case, and the aftermath of the Bailey case, demonstrates that. The court in Bailey, applying the old 924c, which required use or carry in connection and duration during a drug trafficking crime, held that the gun in the trunk of a car when the defendant was in the car itself was not sufficient. Did your client testify? He did. He did. Okay. Well, wouldn't the reason for the guns depend, in part, upon the district court's assessment of your client's credibility? I assume he denied that the guns had anything to do. Well, he, quite frankly, your honor, he denied that the guns were his. The district court generally did not find him a credible witness on a number of points. The district court said, I don't find this credible. I don't find your client credible. No, you're right, your honor. And the district court did not find him credible. And he denied that the guns were his, and the district court didn't find him credible on that. So isn't that not only a factual finding, but isn't it, in part, a credibility finding that we're dealing with here? No, your honor, it's not. Because at the bottom, at the first stage, there still has to be evidence of use of possession in furtherance. The district court may not have believed my client when he said it wasn't my gun. But the government still has to introduce evidence that the gun was possessed in furtherance. And what they did was put on a detective to fill a gap in their evidence, because they had no evidence of Mr. Moore ever carrying the gun. I thought you were going to tell me, because there was so much evidence, I thought you were going to tell me it was cumulative. No, your honor, I don't. I think there's a complete gap in the evidence when it comes to in furtherance. In this case, possession would have been prohibited to your client, right? Yes, and that's count four, for which he was also convicted. Our argument here is that a man- Would that be another element under Lomax beyond mere possession that could be factored in in terms of the connection? It is one of the elements that this court has mentioned in Lomax and in other cases. One of the elements. But at the end of the day, whether he's a felon in possession and therefore convicted under count four, which he was, or whether he's a drug trafficker in possession of a gun in furtherance of drug trafficking, for which he gets five additional years, mandatory additional years, is an element of proof. And the lack of proof here, which was attempted to be filled by a police detective testifying as to the general habits of drug traffickers, not the habits of Mr. Moore, is I think a very relevant point. And in fact, the district court itself recognized this. But you haven't raised a question on the evidentiary ruling. District charge let it in. No, the district court, actually, district court did not entirely let it in. I call your attention to Officer Abdallah's testimony, beginning at page 705 of the transcript. Can I get back to, can I go back to Judge Gregory's point? Because it does seem to me that that's telling. Because if it had been a rifle or a hunting rifle or something that had some sort of legitimate use, wouldn't that, you would use that in your favor to indicate that there was not a sufficient nexus between the drug trade and the gun. But when the possession is, I think we all agree, as my colleague pointed out, illegal, isn't that another factor among many that adds to the weight of the case against you and to the soundness of the trial judge's finding? Well, I think the possession by a felon is a relevant factor that the court has considered. I, as a proud son of Virginia, I would never suggest that these particular guns are also not used for legitimate purposes. And for, may I conclude this thought? Why don't you save that for rebuttal. Okay, thank you. Mr. Pierce, I'd be pleased to hear from you. May it please the court. There are two issues, as Mr. Arofsky had indicated, the suppression issue, which I'd like to address, but start with the 924C, as that's what he dedicated his argument to. As all three of you have noted, there's quite a lot of evidence in the record that Corey Moore was involved with drug trafficking. And although he himself denied that he possessed the guns, the fact finder, the district court judge, found that. And in fact, Mr. Arofsky concedes that here. The only question that appears to be before the court on this issue is a bit of angels dancing on the head of a pin, which is, is there a close linkage, a close enough linkage on a sufficiency challenge to establish that those firearms were possessed in furtherance of a drug trafficking crime? And there's evidence to that effect. Of course, as Judge Gregory indicated, the factors come from primarily the Lomax case from 2002. That includes the type of drug trafficking involved. I mean, here, there's no question. It's factual. And it is factual, so it's a clear error review. This court would have to find that Judge Williams, as the fact finder, clearly erred in determining the facts as he did, as it did. You had a handgun, which this court in King indicated is the type of gun that is often used in drug trafficking. One of the factors is whether that gun is legally possessed or not. As Judge Gregory indicated, and as Corey Moore was, of which he was convicted, he was a felon and therefore not legally entitled to possess a handgun. The loaded Smith & Wesson was founded in the master bedroom closet just beside the $45,000 in drug proceeds. The district court, of course, disbelieved. All right, well, we've been over this without all three of us with our earlier questions. Do you have anything further on that issue? No, then I'll turn to the suppression issue. By failing to raise his motion to suppress until moments before closing arguments began at trial, Corey Moore waived, defendant Corey Moore waived that suppression claim. And there's no good cause to grant relief from waiver, as the district court itself ultimately concluded. Now, the primary argument, as I understand it, on appeal is that by very briefly addressing on the merits that suppression, that oral motion to suppress at trial, that itself was implicit waiver. That's an argument, of course, the district court ultimately rejected itself. When asked on a motion to reconsider. But I guess the question I have is the district court says three different times, this issue is waived. This issue is waived. And then a third time, when you look, when you read through the transcript, it says, again, this issue is waived. It's not fair to the government to bring it up at this particular point in time. Probably, maybe the thing should have come before us in the earlier appeal. But there's no, he said it's meritless in any event, mainly because of Hadari D. But there's no, there's nothing in the trial judge's comment that suggests a good cause basis for the waiver. You just don't get that. It's waived, period. That's correct, Judge Wilkinson. Not only, the district court admittedly doesn't address it in trial itself in the kind of, the context of just before closing arguments, just as a very brief discussion. But precisely, when it had the time to consider the issue, the district court a number of times said, this is waived. And this is distinct from the case on which Corey Moore primarily relies on appeal, the Vasquez case out of the Ninth Circuit. In that case, the district court was presented with the waiver argument when the motion was made at trial, consciously said, no, I'm going to rule on this, had briefs before it, heard an oral argument from both parties, and under that set of facts, the Ninth Circuit said, that's a way to find that the ruling on the merits was an implicit finding of good cause. Here, we don't have that, and we have the district court ultimately concluding that it was waived. But except in your argument, but don't you have a little different situation here? As Judge Wilkinson said repeatedly, it's waived, it's waived, it wouldn't be fair. But then the district court seems to suggest that, I think the reason it gave is that, I have everything I need before me to rule on this, and ruled on it. Why is it not implicitly saying, I am going to rule on the merits, and implicitly the reason for the good cause is, there's no reason not to, there's no delay, I have all the evidence that's already before me, I'm going to rule. Why is that not similar to the Ninth Circuit situation, where it did rule, the district court did rule? Because here you have the district court explicitly saying there is waiver, and then doing what many district courts do quite frequently, is providing alternative bases for reaching its decision. But that's the last thing he did. Waiver, waiver, waiver, and it's like Thomas Jefferson said, on changing one's mind, you have a right to be smarter today than you were yesterday. So, isn't it a sense that the court said, well, you know, the better thing, I think it is a waiver, it is, but I have everything before me, and seem to be implicitly in fairness, I should rule on this in merit, and ruled against it. I mean, it seems like that's what the district court did. The district court did provide alternative bases to rule on, and to deny the suppression motion. And it did make some statements that, well, when it was before me, I thought I had enough evidence. But in the course of doing that, he says, this is unfair to the government. That's correct, Judge Wilkinson. And the reason it's unfair is that, and it gets in part to a question of prejudice, if we were to look at the merits, and we think the evidence is strong enough that the government should prevail if this court were to get to the merits, but let's get particularly to the question of reasonable suspicion. I think our argument on seizure is quite strong. Before we get there, it serves the interest of clients, and it serves the whole interest in orderly procedure for these suppression motions to be brought up prior to trial, unless there's some real good reason for not doing so. And here the only reason was, and I didn't know everything, but he certainly knew about the stop and the rest. But if we have suppression motions being brought right before closing argument, it's a very awkward time to make a suppression hearing because to do it in anything like a thorough way, you have to really interrupt the trial, and you have to keep the jury on hold while you go into some sort of hearing room and hold a hearing on it. And who knows how long that takes and all the rest, but it completely disrupts the rhythm of the trial. It catches the litigants unprepared, and in many cases the evidence that they want suppressed has already been let in. So you have to walk the whole trial back because there may have been references to that evidence being let in, and how much better it is for the litigants to know at the outset of trial what evidence they're permitted to address and what's going to get admitted and what evidence they're not. That's right. And if you bring it in right before closing arguments, it's going to be addressed whether obliquely or otherwise, and the litigants would have been proceeding in the dark. And this is why the federal rules of criminal procedure say to bring it up beforehand, and this serves the interests of all parties. This isn't just a government's interest that's served. This isn't just an accused's interest that's served. It's in the interest of everyone to have these things held earlier rather than later. A lot of times the case is dismissed without the need for a trial if the suppression motion is granted. That's right, Judge Wilkinson, and it's important that they're brought before trial. It benefits both parties. And to get more squarely to the question that you asked, Judge Gregory, when the government was eliciting testimony from Officer Hoopley on direct examination, on redirect, and very briefly as a rebuttal witness, it did so in part to rebut Corey Moore's testimony, but really to prove up the substantive charges of the four charges against him. It did not elicit testimony with an eye towards, well, is there going to be a constitutional challenge to whether this is admissible evidence or not? Aren't you worried a little? It seems to me that you're overcomplicating the issue perhaps, Mr. Pierce. Doesn't this come down to whether a trial court can change the basis for its ruling as long as it still has control over its judgment order? I think that is a way to do it. Isn't that really what it comes down to? It does, but it's not uncomplicated by the fact of a rationale changing in between. But, yes, a simple way to dispose of this case is to say, what was the baseline determination that the district court made and why? It denied the motion to suppress because it found it waived. What was the final decision? The court changed its mind on its rationale. It adhered to its judgment, but changed its mind on its rationale, and why can't a court do that? Isn't that what this case is about? I think that's the easiest way to dispose of this case. It would be dishonest, however, not to note that the district court, at an earlier point, had a ruling on a different rationale and that other circuits have found that rationale sufficient. But that is absolutely right, Judge Keenan, that the easiest way to dispose of this is that the baseline ruling, the bottom line ruling was a denial based on waiver. There was no finding of good cause, as Judge Wilkinson indicated. The only real argument that Corey Moore advances, other than this implicit finding of good cause, is, oh, there were some inconsistencies in testimony. Well, that's precisely what a suppression hearing is for, is to suss those questions out and not to have to do it at trial. My point is, why can't the court change, and I guess maybe I'm missing something, why can't the court change its ruling on good cause? I mean, what precludes a court from changing its reasons for doing something as long as it has control over its judgment order? I'm not aware of any case that would suggest that it doesn't, and that would be a way of resolving this case that we would certainly advocate. Does the court have any questions? I'm happy to address the merits of the suppression issue. Otherwise, I'll just yield the balance of my time. Mr. Urofsky. Mr. Urofsky, I've got the same question for you. You probably guessed it. I did, Your Honor. What precludes the court from changing its rationale while it still has control over its judgment order? It might be right, it might be wrong, but the court has power over its judgment order. What precludes it from changing its rationale? Well, I think in this particular case, Your Honor, the court did exactly that. First it found waiver, and then it found that there was no merit. So it did address the merits. Well, it bounced around. It bounced around. There was waiver, then it said there's no merit, and then it went back and said I'm going to make my final judgment that it is waived. What stops the court from doing that? If the court's wrong as to whether it was waived, that's something you can debate, but doesn't the court have inherent authority over the reasons for its judgment? Well, the judgment at the end of the day was whether or not to convict, to find Mr. Moore guilty. The question on the motion itself is what were the bases for the motion and did the court? But if we were to adopt your position, I didn't mean to cut you off there, and this is what I'm trying to think through. If we're to adopt your position, don't we have to say that a court can't change its rationale? In support of its ultimate determination that the motion to suppress is denied, that it cannot change its rationale? I don't think you have to say that, Your Honor. Why aren't we boxing ourselves in on this if we agree with you? Well, I tend to try to avoid boxing the court in because often it's in my interest to have the court change its mind. But what I think in this particular case, this court was open to a number of different arguments and a number of different rationales. It permitted these matters to be briefed precisely because it was a bench trial. So some of the concerns that Judge Wilkinson raised, not all of them, but some of them, were addressed by the fact that this was a bench trial. So the jury wasn't going to be inconvenienced. The judge is in a place to consider what evidence would be not considered in his ultimate judgment and he may very well have viewed it as efficient to resolve this issue now. I think, frankly, this is why, and Your Honor may have been correct that it should have been raised earlier, but I think in the confusion of the initial suppression motion where they won in the sense that everything was thrown out and then an interlocutory appeal and a return. Why couldn't you have raised it? I mean, you attacked the warrant in the first appeal. Couldn't you have raised this then? I mean, my question is couldn't it have been raised twice? First of all, prior to your attack on, I mean, together with your attack on the sufficiency of the warrant, which we resolved ultimately on the Leon grounds. And then secondly, prior to the bench trial in this case. I mean, this really is the 11th hour. Which is why I think Judge Williams, in the end, after saying waiver twice, then addressing the merits, comes back finally and says it's waived. But he also said, Your Honor, that he had all the information he needed to rule on the merits, that he had heard testimony from both. But even if it's on alternative ground, the discussion of the merits didn't rescind his view that it was a waiver. And a lot of times, courts, in order to protect themselves against appeals, either to this court or to the Supreme Court, will provide alternative grounds. So, yes, I quite agree with Judge Keenan that a court is ultimately in control of its judgment order. And it was perfectly free after, as she puts it, bouncing around to come back to the point, bang, at the end, this is waived. And that's the basis. But even when it addressed the question of whether there was a stop in the whole idea of submission to an order to stop, there wasn't any view that I got from reading the transcript that the district court had, number one, revoked its earlier feeling that the whole issue was waived, and number two, that it hadn't made any kind of implicit finding of good cause. So, it comes back to waiver, but even the most charitable reading, from your standpoint, would still leave this as an alternate, as a judgment with alternate basis. It is a judgment, I believe, with alternate basis, and unfortunately, the waiver is one of those bases, and we recognize that all the way through. But you're not saying it can't, just because it addressed the merits, you're not saying it can't come back to waiver, which, of course, it did. I don't say that, Your Honor. The court found, the court clearly found, the record is unambiguous on that, that there was first the waiver, and then there was the merits. It was kind of a drift of your comments, which was that we had to consider it on the merits, because the district court considered it on the merits, notwithstanding that final emphatic statement about waiver. I believe the issue was properly teed up for the district court. The district court did rule on the merits, and in the issues of efficiency, I think this court can also address that. The good cause, which was presented to the court below, is, in fact, that the testimony of the police officer was inconsistent with his own written reports, the only information that the defense counsel had at the time of the original suppression hearing. And the defense counsel at that time went forward and successfully, at least at first, on the basis of the inadequacy,  Is there anything further, sir? Your Honor, just one last bit, which I wanted to raise at the end of my opening argument, is, again, on the 924C case. Your Honor mentioned that the evidence came in from Officer Abdallah, and I just wanted to call the court's attention to pages 705 to 707 of the record, in which the government attempts to elicit from the expert witness facts that relate to the information and why a drug trafficker generically would have a gun. And they ask several questions. The defense objects. The court overrules and says this is background until they get to that ultimate question. Why did Mr. Moore have this gun? And at that point, the court sustains the objection, saying he can't testify to that. So there is, in fact, a hole in the evidence, in the government's evidence, that makes the finding itself invalid. No, I think we understand you on that point. Thank you, Your Honor. I also want to say to you, Mr. Urofsky, I see that you're court-appointed. We really certainly diligently defended your client, and we appreciate that. And we depend on the good efforts of you and many other able attorneys to enhance the quality of our own tasks. So thank you so much. Thank you, Your Honor. We'd like to come down and say hi. Then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Barbara Milano Keenan